# Supreme Court of the Navajo Nation

**Amigo Chevrolet, Inc., Petitioner-Appellant,**
v.
**Robert E. Lee and Phoebe J. Lee, Respondents-Appellees.**
**Decided August 4, 1988**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

James J. Mason, Esq., Gallup, New Mexico, for the Appellant; Diana Calais, Esq., and Dorothy Alther, Esq., DNA-People's Legal Services, Inc., Crownpoint, New Mexico, for the Appellees.

Opinion delivered by TSO, Chief Justice.

## I

This case arises from Amigo Chevrolet's petition for repossession of a truck bought by Robert and Phoebe Lee, who were delinquent in payments. The Lees filed a counterclaim under the Navajo repossession laws, 7 N.T.C. § 607-610, for statutory damages arising from an earlier repossession by Amigo Chevrolet of the same vehicle without written consent or court order. The issue on appeal is whether a form document, entitled "Unconditional Release of Vehicle" and signed by Lee at the time the truck was returned to him, constituted a valid release of Amigo Chevrolet from any and all claims arising out of the repossession, including claims from illegal, self-help repossession. The Crownpoint District Court held that the release was invalid. It granted the Lees' counterclaim and denied the petition for repossession. We affirm the judgment of the district court.

The Lees bought the truck on October 6, 1984, and signed an installment sales contract. In November 1986, the Lees were three months delinquent, and on November 26, 1986, an agent of Amigo Chevrolet took the truck from where Mrs. Lee worked, which was within the territorial jurisdiction of the Navajo Nation, without the written consent or court order required by 7 N.T.C. § 607. Two days later, Mr. Lee retrieved the truck from Amigo Chevrolet after paying the delinquent amount and signing the form reproduced below in its entirety:

*UNCONDITIONAL RELEASE OF VEHICLE*

Having met the requirements of AMIGO CHEVROLET, INC., to release my *1984 Chev. 1/2 T SWB*, I do hereby affirm by my signature that the vehicle has been returned to me in the same condition it was prior to repossession, and all personal property remains intact, and has been returned to me. I release AMIGO CHEVROLET, INC., from any and all claims arising out of the repossession. This has been explained to me, and I do understand what it means.

The transcript of testimony at the district court hearing indicates that Mr. Lee believed the form was only for release of the truck. Tr. at 29, 30. He did not understand it to contain any waiver of future claims. Tr. at 33. He did not intend to settle any claims. Tr. at 34. There was no evidence presented that at the time the release was signed the parties negotiated or bargained for an agreement concerning claims under the Navajo repossession laws, nor that there was any discussion of demanding accelerated payment or rewriting the contract for lower payments. On the contrary, testimony by petitioner's witness indicates only that the release was presented to Lee for his signature and that he was asked if he understood it. Tr. at 16, 17. Having no questions, Lee signed it. *Id.*

The Lees stopped making any payment on the truck after January 20, 1987. On March 5, 1987, more than three months after the date of the release, the parties rewrote the contract for smaller payments. Based on the delinquency of payments under this rewritten contract, Amigo Chevrolet petitioned the district court on June 4, 1987, for repossession.

## II

The Navajo repossession laws strictly provide that the personal property of Navajos shall not be taken from the territorial jurisdiction of the Navajo Nation without the written consent of the purchaser at the time repossession is sought or by order of a Navajo Nation district court. 7 N.T.C. § 607. If Section 607 is violated, a civil liability of not less than 10 percent of the cash price plus the finance charge is provided at 7 N.T.C. § 609.

The Navajo repossession laws are the result of a necessary exercise of tribal sovereign powers and are designed to protect the health, safety, and welfare of Navajo Nation citizens. *Babbitt Ford, Inc. v. The Navajo Indian Tribe*, 710 F.2d 587, 593 (9th Cir. 1983). In its resolution and minutes of February 7, 1968, the Navajo Tribal Council voiced its concerns about self-help repossession. The Navajo Tribal Council enacted the Navajo repossession laws to avoid breaches of peace and possible violence. It sought to protect the Navajo members who would be left stranded in remote areas of the reservation. The Navajo Tribal Council also specifically intended to protect Navajo citizens from contractual overreaching and to provide each member an opportunity to have a day in court before their property was taken. The intention of the Navajo Tribal Council is

well documented in *Russell v. Donaldson*, 3 Nav. R. 209 (Window Rock Dist. Ct. 1982), which, in tandem with N.U.C.C. § 9-501(3), established the rule that written consent must be obtained at the time of the repossession and may not be waived through prior agreements, such as security agreements made at the time of purchase. This Court agrees with the rule established in *Donaldson*.

This Court favors settlement agreements of disputed claims between parties in order to avoid litigation in the courts when they are fairly made as the result of negotiation and bargaining and do not contravene public policy. A release of claims under the Navajo repossession laws made as part of a settlement agreement after an illegal repossession has occurred does not further infringe on the public interest, but any such waiver of claims under the Navajo repossession laws will be scrutinized closely by the Navajo courts to ensure that the agreements were made openly and fairly. Such close scrutiny is necessary in order to ensure the same protection of consumers which the Navajo repossession laws seek.

A release of claims as a part of a settlement agreement is contractual. Generally, a valid settlement, which includes a release of claims arising from the Navajo repossession laws, requires that the intention to discharge another from the claim be manifest, that mutual assent to a compromise reached through negotiation be evident, and that sufficient consideration exist to support the release.

A party can release a claim only if he knows that the claim exists and he intends to discharge the other. For this reason, form documents which do not specify claims being released and which form part of a general release of a vehicle are not likely to pass the close scrutiny necessary for waivers of the Navajo repossession laws. A valid release of claims arising from the Navajo repossession laws must be specifically entitled and state the claim being released. It must not be included in a general release form.

A valid settlement which includes a release of claims under the Navajo repossession laws is arrived at mutually by both parties through negotiation. In this case, there is no evidence of negotiation and mutual assent: Mr. Lee paid his delinquency, signed a form, and retrieved his truck. There is no indication that Mr. Lee intended to settle any claim arising from the illegal repossession nor that he had any knowledge of a claim under the Navajo repossession laws. Without the intention and knowledge, there can be no negotiation or meeting of the minds.

A release cannot be valid unless there is consideration given for the release. Amigo Chevrolet contends that its consideration amounted to (1) rewriting the contract at more favorable terms and (2) not demanding accelerated payment of the balance due. In fact, the contract was not rewritten until three months after the release was signed and the Lees had again become delinquent in payments. There is no evidence in the record or in the release itself that an accelerated payment was demanded and then withdrawn in order to serve as bargained-for consideration.

Appellant also argues that the written and signed words of the release are

unambiguous and that the release may only be set aside by this Court if there is clear and convincing proof of misrepresentation, fraud, or mistake. This Court adopts this as a sound rule, but we cannot apply it in this case because we find the release to contain ambiguous language which is obscure, indefinite, and capable of more than one meaning. We cannot be certain that claims under the Navajo repossession laws were intended to be released nor that any consideration existed to support the release. Such language is not included. Nor are we helped by the title of the release which purports that the document is a release of a vehicle, a release very different from the one alleged by Amigo Chevrolet. The language is general and written for a wide range of releases from claims due to damage, loss, or other injuries following a presumably legal, self-help repossession.

In the present case, the evidence does not support a valid release as part of a settlement agreement. The decision of the Crownpoint District Court is hereby affirmed.